UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR MEDICAL PROGRESS,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. 21-641 (RBW) |
| ) | |
| UNITED STATES DEPARTMENT OF  ) | |
| HEALTH AND HUMAN SERVICES,  ) | |
| ) | |
| Defendant.  ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, the Center for Medical Progress ("CMP"), brings this civil action pursuant to the Freedom of Information Act ("the FOIA"), 5 U.S.C. § 552, against the United States Department of Health and Human Services ("HHS"), seeking documents from the National Institutes of Health ("NIH"), a component of HHS. See Complaint ("Compl.") ¶ 5, ECF No. 1. Currently pending before the Court are the defendant's motion for summary judgment, see Defendant's Motion for Summary Judgment ("Def.'s Mot.") at 1, ECF No. 15, and the plaintiff's cross-motion for summary judgment, see Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot.") at 1, ECF No. 17. Upon careful consideration of the parties' submissions,[1] the Court

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 15-1; (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 15-2; (3) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion ("Pl.'s Mem."), ECF No. 16; (4) the Plaintiff's Response to Defendant's Statement of Material Facts as to Which There is no Genuine Dispute and Further Statement in Support of Plaintiff's Cross-Motion ("Pl.'s Facts"), ECF No. 16; (5) the Reply in Support of Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 19; and (6) the Plaintiff's Reply Memorandum in Support of its Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 21.

concludes for the following reasons that it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed. On April 28, 2020, David Daleiden ("Mr. Daleiden"), sent an email on behalf of the plaintiff to Lisa Alberts ("Ms. Alberts"), the FOIA Office Coordinator for the National Institute of Mental Health ("NIMH")—a component of the defendant—requesting "an opportunity to inspect or obtain copies of the grant applications(s) for the following projects":

> a) "NIMH, NICHD, and NINDS Brain and Tissue Repository," Project Nos. 27120130003 lC-9-0-1, 27120130003 lC-06-0-1, and 271201300031C-4-0-1, PI: Vahram Haroutunian (https://projectreporter.nih.gov/project info description. Cfm?aid=9332244&map=y)
>
> b) "NIMH, NICHD, and NINDS Brain and Tissue Repository," Project Nos. 271201300032C-6-0-1 and 271201300032C-2-0-1, PI: David Lewis (https://projectreporter.nih.gov/project info details.cmf?aid=8882066&icde=0)

Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2. On the same day, Mr. Daleiden also sent a FOIA request on behalf of the plaintiff to another component of the defendant, the National Heart, Lung, and Blood Institute ("NHLBI"), requesting "an opportunity to inspect or obtain copies of the grant application(s) for the following projects":

> a) "NIMH, NICHD, and NINDS Brain and Tissue Repository", Project Nos. 271201300031C-7-0-1 and 271201300031C-2-0-1, PI: Vahram Haroutunian (https://projectreporter.nih.gov/project_info_description.cfm?aid=9535021&icde=0)
>
> b) "Developing Novel Therapeutic Approaches for White Matter Injury in the Neonatal Brain", Project Nos. 5R21NS093145-02 and 1R21NS093145-01A1, PI: Benjamin Deneen (https://projectreporter.nih.gov/project_info_description.cfm?projectnumber=5 R21NS093145-02)

Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.

On June 3, 2020, "Mr. Daleiden contacted Ms. Alberts to inquire about the status of [the p]laintiff's request sent directly to Ms. Alberts on April 28, 2020." Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5. In her email response, Ms. Alberts informed Mr. Daleiden that she "started the search for records" based on the email Mr. Daleiden sent to her. Def.'s Facts ¶ 6 (internal quotation marks omitted); Pl.'s Facts ¶ 6. The defendant represents that Ms. Alberts also stated in the response that the projects Mr. Daleiden sought "are actually contract records (not grant applications)," and she had "obtained the executed contracts that match to Project No. 271201300031C (Vahram Haroutunian) and Project No. 27120130032C (David Lewis)." Def.'s Facts ¶ 7 (internal quotation marks omitted); Pl.'s Facts ¶ 7. Ms. Alberts also "asked Mr. Daleiden '[w]ill this serve your needs, or are you seeking something different?'" Def.'s Facts ¶ 8; Pl.'s Facts ¶ 8. On June 4, 2020, Mr. Daleiden told Ms. Alberts "[y]es, I believe that that is what I am looking for." Def.'s Facts ¶ 9; Pl.'s Facts ¶ 9.

On August 20, 2021, Ms. Alberts provided NIMH's "final response" to the plaintiff's FOIA request. Def.'s Facts ¶ 11; Pl.'s Facts ¶ 11. Ms. Alberts noted that she was providing "214 pages responsive" to the plaintiff's request regarding the two contracts it "sounded like [Mr. Daleiden was] seeking[,]" namely, "271201300031C – Haroutunian and 271201300032C – Lewis." Def.'s Facts ¶ 12 (internal quotation marks omitted); Pl.'s Facts ¶ 12. Further, Ms. Alberts stated that it is the defendant's "policy to expunge [items] such as line item costs, estimated costs, names/signatures, subcontracting plan, and future option year costs and percent effort and that such information was removed from the contracts provided." Def.'s Facts ¶ 13 (internal quotation marks omitted); Pl.'s Facts ¶ 13. "Between August 21, 2020, and September 30, 2020, Mr. Daleiden asked Ms. Alberts a few questions by email." Def.'s Facts ¶ 14; Pl.'s

Facts ¶ 14.  "On August 21, 2020, Mr. Daleiden stated [in an email to Ms. Alberts] that it appears that the contract solicitations, terms, and Statements of Work required certain written submissions to the contracting agencies that would be relevant to [his] request."  Def.'s Facts ¶ 15; Pl.'s Facts ¶ 15.  Also, "[o]n August 21, 2020, Mr. Daleiden asked Ms. Alberts to 'advise as to the most efficient way for me to request further document production here[.]'"  Def.'s Facts ¶ 16; Pl.'s Facts ¶ 16.  In response, Ms. Alberts informed Mr. Daleiden that "[s]ubmissions (also called bids or proposals) that the Contractors would have submitted in order to be selected for these executed contracts are protected; they are not releasable."  Def.'s Facts ¶ 17; Pl.'s Facts ¶ 17.  "On August 21, 2020, Mr. Daleiden asked Ms. Alberts whether 'progress reports made under the contract' were 'potentially releasable[.]'"  Def.'s Facts ¶ 18; Pl.'s Facts ¶ 18.  On September 15, 2020, Ms. Alberts sent an email to Mr. Daleiden, indicating "that the reports are not releasable as they deal with staff effort, which is protected," and asked Mr. Daleiden to "clarify [his] specific 'content' interest," so the defendant "can check if such information exists."  Def.'s Facts ¶ 19 (internal quotation marks omitted); Pl.'s Facts ¶ 19.

On September 21, 2020, Mr. Daleiden also asked Ms. Alberts to "search across the project documents for the terms 'fetal,' 'prenatal[,]' 'post-conception[,]' 'abortion[,]'] and 'Planned Parenthood.'"  Def.'s Facts ¶ 20 (internal quotation marks omitted).  Additionally, Mr. Daleiden asked for the "specific authority under which [the] submissions, protocols, progress reports, staff effort, etc." are not releasable.  Def.'s Facts ¶ 21 (internal quotation marks omitted); Pl.'s Facts ¶ 21.  On September 24, 2020, Ms. Alberts responded that "Exceptions 4, 5, and 6 [of the FOIA] apply to the types of records we collect and maintain."  Def.'s Facts ¶ 22 (internal quotation marks omitted); Pl.'s Facts ¶ 22.  Moreover, Ms. Alberts stated that she would "check to see if there are any reports with the type of information" that Mr. Daleiden was seeking.

Def.'s Facts ¶ 23 (internal quotation marks omitted); Pl.'s Facts ¶ 23. On September 30, 2020, Ms. Alberts advised Mr. Daleiden that the Contracting Office staff and the supervisor in the relevant program both confirmed that "neither of these contracts involve human fetal/prenatal tissue specimens from elective abortions." Def.'s Facts ¶ 24 (internal quotation marks omitted); Pl.'s Facts ¶ 24.[2]

On March 10, 2021, the plaintiff initiated this case against the defendant, "to compel compliance with [the] FOIA." Def.'s Facts ¶ 25; Pl.'s Facts ¶ 25. On August 30, 2021, the defendant filed its motion for summary judgment, see Def.'s Mot. at 1, and on September 29, 2021, the plaintiff filed its combined cross-motion for summary judgment and opposition to the defendant's motion, see Pl.'s Mot. at 1. On November 5, 2021, the defendant filed its combined reply in support of its motion and opposition to the plaintiff's cross-motion, see Def.'s Reply at 1, followed by the filing of the plaintiff's reply in support of its cross-motion on November 19, 2021, see Pl.'s Reply at 1.

## II.  STANDARD OF REVIEW

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). The non-moving party, however, cannot rely on "mere

---

[2] The plaintiff adds that as of October 2, 2020, the "NIH Project webpages for NIH Project No. 271201300031C-6-0-1 and 271201300032C-2-0-1 did not state whether the project was a grant or a contract." Pl.'s Facts ¶ 57.

5

allegations or denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248). Thus, "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J., concurring) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)). If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[I]n ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. Fed. Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citing Rhoades v. McFerran, 517 F.2d 66, 67 (2d Cir. 1975).

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. §§ 552(a)(3)(A), (B)). The defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure." Boyd v. Crim. Div. of U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted). The Court will grant summary judgment to the government only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of

6

Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'"  Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

"In a FOIA case, a court may grant summary judgment solely on an agency's affidavits or declarations when they 'describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Powell v. Internal Revenue Serv., 280 F. Supp. 3d 155, 160 (D.D.C. 2017) (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Cent. Intel. Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.     ANALYSIS

The defendant argues that it is entitled to summary judgment because the plaintiff "cannot establish that [it] violated [the] FOIA[,]" where the documents it produced to the

defendant were not responsive to the request actually submitted by the plaintiff.  Def.'s Mem. at 1.  Specifically, the defendant argues that "[u]pon receipt of the [plaintiff's document] requests [it] searched all logical locations for the information requested by searching the . . . [NIH's] Information for Management Planning Analysis and Coordinator ("IMPAC") grants database and inquir[ed] with [the] NIMH's Grants Management Branch Staff to determine whether there were any responsive records."  Id.  Ultimately, the defendant contends that the "NIMH did not withhold any responsive records because the projects in question obtained funding through competitively awarded contracts, not grants[,]" and therefore, "[it] did not withhold any responsive records because the projects in question obtained funding through competitively awarded contracts, not grants."  Id.  The plaintiff argues in response that "[the d]efendant was reasonably aware of what records [the p]laintiff was requesting and failed to search for them by impermissibly narrowing the scope of [the p]laintiff's request."  Pl.'s Mem. at 3.

Alternatively, the defendant argues that even if the records the plaintiff now alleges it sought:

> could be construed to seek the awarded contracts and the proposals for those contracts, [it] has appropriately withheld the proposals under FOIA Exemptions 3, 5 U.S.C. § 552(b)(3), and redacted from the released contracts confidential commercial and financial information under Exemption 4, 5 U.S.C. § 552(b)(4), and identifying information pertaining to third parties under Exemption 6, 5 U.S.C. § 552(b)(6).

Def.'s Mem. at 1.  In response to this alternative position, the plaintiff argues that "[the d]efendant cannot withhold information that is (1) already in the public domain (certain names and commercial information) and (2) is not confidential and/or does not cause a reasonably foreseeable harm if disclosed (costs associated with the contracts)."  Pl.'s Mem. at 3.  The Court will first address whether the defendant properly assessed what documents the plaintiff was

8

requesting before determining whether the defendant's search in response to the plaintiff's FOIA request was adequate.

A.    **Whether the Defendant Properly Assessed the Scope of the Plaintiff's FOIA Request**

The Court first assesses whether the defendant properly interpreted the scope of the plaintiff's FOIA request.  On this question, the parties dispute whether the plaintiff's requests for two grant applications was sufficient for the defendant to appreciate that the requests were actually for documents associated with funding obtained through competitively awarded contracts.  The defendant posits that "[i]f [the p]laintiff wanted all contracting documents associated with the project numbers referenced in its FOIA request, it could have submitted another FOIA request that sought such information."  Def.'s Mem. at 8.  Thus, the defendant contends, "[the p]laintiff's failure to do so precludes it from asking, in the context of this lawsuit, for information that falls outside of its request[.]"  Id.  The plaintiff responds that "[o]nce it became clear that the project numbers [in its FOIA request] were contracts, [the d]efendant had a statutory obligation to search for the contract proposals."  Pl.'s Mem. at 5.  Relying on this Court's decision in New Orleans Workers' Center For Racial Justice v. United States Immigration & Customs Enforcement, 373 F. Supp. 3d 16, 33 (D.D.C. 2019) (Walton, J.), the plaintiff contends that "[t]he uncontested evidence unequivocally demonstrates that [the d]efendant did in fact determine precisely what records were requested by [the p]laintiff[,] . . . create[ing] an affirmative obligation to search for the materials desired by [the p]laintiff[,]" Pl.'s Reply at 2 (internal quotation marks omitted).

"A FOIA requester has an obligation to 'reasonably describe[]' the records [it] seeks." Wallick v. Agric. Mktg. Serv., 281 F. Supp. 3d 56, 67 (D.D.C. 2017) (quoting 5 U.S.C. § 552(a)(3)) (first alteration in original).  Although "[a]gencies must read FOIA requests 'as

9

drafted[,]'" Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)), "an agency analyzing [a] request 'also has a duty to construe [the] FOIA request liberally[,]'" Wallick, 281 F. Supp. 3d at 67 (second alteration in original) (quoting Nation Mag., Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)). Further, in construing a FOIA request, an agency may "not . . . read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." Hemenway v. Hughes, 601 F. Supp. 1002, 1005 (D.D.C. 1985). At bottom, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." Yeager v. Drug Enf't Admin., 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks omitted).

Here, for the following reasons, the Court concludes that the defendant properly determined the scope of the plaintiff's FOIA request. The plaintiff's request sought a specific set of documents—"grant applications[,]" Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2,—to which there were no responsive documents, see Def.'s Mot., Exhibit ("Ex.") 1 (Declaration of Gorka Garcia-Malene ("Garcia-Malene Decl.)) ¶ 16, ECF No. 15-4 ("Ms. Alberts searched the IMPAC grants database using the project numbers provided in [the p]laintiff's FOIA request; that search returned no records."); id., Ex. 1 (Garcia-Malene Decl.) ¶ 17, ECF No. 15-4 ("NIH defines a [g]rant as an [a]ssistance mechanism to support research for the public good[.]" (internal quotation marks omitted)). Based on the definition assigned to the term "grant" by the NIH, it "determined that it did not have grant applications associated with the project numbers that [the p]laintiff referenced in its request[.]" Id., Ex. 1 (Garcia-Malene Decl.) ¶ 17. However, Ms. Alberts found contract records responsive to the plaintiff's FOIA request and asked Mr. Daleiden whether "th[e contract records would] serve [the plaintiff's] needs, or [was the plaintiff] seeking something different[.]"

10

Def.'s Facts ¶¶ 7–8; Pl.'s Facts ¶ 7–8. Mr. Daleiden then confirmed that "[y]es, [he] believe[d] that is what [he] [was] looking for. Thank you [Ms. Alberts] for all your good work." Def.'s Facts ¶ 9; Pl.'s Facts ¶ 9. In her letter response to Mr. Daleiden's email, Ms. Alberts noted that "[he] clarified that [the] two contracts [her office] located . . . sounded like what [the plaintiff] w[as] seeking and that she was enclosing [two hundred fourteen pages responsive to [his] request." Def.'s Facts ¶ 12 (internal quotation marks omitted); Pl.'s Facts ¶ 12. Thus, the defendant had no duty to further ascribe any other meaning to the plaintiff's requests as drafted and clarified by Mr. Daleiden. See, e.g., Dillon v. U.S. Dep't of Just., 444 F. Supp. 3d 67, 85 (D.D.C. 2020) ("The [agency]'s duty to 'interpret FOIA requests liberally and reasonably' does not require it to 'extend the meaning of the request to include things' that the requester did not seek." (quoting Wallick, 281 F. Supp. 3d at 67)); see Miller, 730 F.2d at 777 ("[The plaintiff's] request was not broadly drawn; it made a specific inquiry about specific [documents]. The agency was bound to read it as drafted, not as either agency officials or [the plaintiff] might wish it was drafted."); see also Downs Law Grp., P.A. v. U.S. Coast Guard, No. 21-cv-2407 (RBW), 2023 4744044, at *6 (July 25, 2023) ("[T]h[ese] email[s] appear[] to represent a clarification regarding the plaintiff's original request, especially in light of the parties' apparently ongoing discussions[.]").

Furthermore, the discussions between the plaintiff's representative, Mr. Daleiden, and Ms. Alberts further illustrate the disconnect between the scope of the plaintiff's FOIA request as drafted and the defendant's perception of the documents that were being sought. After Ms. Alberts sent the response letter confirming the documents sought to Mr. Daleiden, he thereafter asked Ms. Alberts to "search across the project documents for the terms 'fetal[,]' 'prenatal[,]' 'post-conception[,]' 'abortion[,]' and 'Planned Parenthood.'" Def.'s Facts ¶ 20 (internal

11

quotation marks omitted).  Soon thereafter, Ms. Alberts advised Mr. Daleiden that neither of the contracts provided to him "involve human fetal/prenatal tissue specimens from elective abortions."  Def.'s Facts ¶ 24; Pl.'s Facts ¶ 24.  Therefore, it cannot be the case that "[the] agency bec[a]me[] reasonably clear as to the materials desired [by the plaintiff]," Truitt v. U.S. Dep't of State, 897 F.2d 540, 544 (D.C. Cir. 1990), considering that the plaintiff narrowed its own request rendering the contract records unambiguously non-responsive to the plaintiff's requests in light of Mr. Daleiden's additional clarification.  Indeed, "a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof[,]" LaCedra v. Exec. Off. for U.S. Att'ys, 317 F.3d 345, 348 (D.C. Cir. 2003); however, "[a] requestor may not challenge the adequacy of a search after an agency limits the scope of a search in response to direction from the requestor[,]" Dillon, 444 F. Supp. 3d at 87 (quoting Lechliter v. Dep't of Defense, 371 F. Supp. 2d 589, 595 (D. Del. 2005)).

      This Court's decision in New Orleans Workers' Center is not to the contrary.  In that case, the Court determined that the defendant wrongfully narrowed the scope of its search where it "did not notify the plaintiffs at any point prior to the filing of [that] action that it believed the [r]equest failed to reasonably describe the records sought or give the plaintiffs an opportunity to address [the] perceived failures[ of reasonably describing the records that were sought.]"  New Orleans Workers' Ctr., 373 F. Supp. 3d at 33.  Here, however, the defendant did afford the plaintiff the opportunity to clarify what records it sought, and the plaintiff obliged.  See Def.'s Facts ¶ 7 (explaining that Ms. Alberts informed Mr. Daleiden that the program numbers he provided were actually contract records rather than grant application records); id. ¶ 9 (stating that Mr. Daleiden affirmed that the documents received were potentially the documents sought by the plaintiff).  And simply because the documents provided by the defendant did not ultimately

contain the elective abortion-related information the plaintiff sought from the defendant, the plaintiff cannot now attempt to expand the scope of its request, having previously narrowed it, after this litigation was commenced. See Dillon, 444 F. Supp. 3d at 86 ("[The p]laintiff's contention that a FOIA requester can explicitly narrow, test, and then broaden [its] request . . . after filing litigation sits without any firm basis in the statutory text or associated case law.") (citation omitted); Pray v. U.S. Dep't of Just., 902 F. Supp. 1, 2 (D.D.C. 1995), aff'd in part, rev'd in part on other grounds, No. 95-5383, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996) (limiting the plaintiff's lawsuit to the "scope of [the] plaintiff's FOIA request, the content of [its] complaint[,] . . . and the subject of [its] administrative appeal").

Thus, based upon "the Court's read of the text of th[e emails] in the broader context of" this case and the plaintiff's other "communications with the [defendant] concerning [its] FOIA request[]," Dillon, 444 F. Supp. 3d at 85, the Court concludes that the defendant properly determined the scope of the plaintiff's FOIA request.[3]

**B.     Whether the Search in Response to the Plaintiff's FOIA Request Was Adequate**

Having concluded that the defendant properly determined the scope of the plaintiff's FOIA request, the Court next considers whether the defendant's search for documents was adequate. "An agency fulfills its obligations under [the] FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt, 897 F.2d at 542). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but . . . whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984). "The

---

[3] Because the Court concludes that the contract records were not responsive to the plaintiff's FOIA request, the Court need not reach the question of whether the exemptions cited by the defendant were proper.

13

adequacy of an agency's search for documents requested under [the] FOIA 'is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.'" Montgomery v. Internal Revenue Serv., 514 F. Supp. 3d 125, 131 (D.D.C. 2021) (quoting Weisberg, 745 F.2d at 1485). "[T]he agency may submit affidavits or declarations that explain the scope and method of its search in 'reasonable detail.'" Id. (quoting Perry, 684 F.2d at 127). And "[a]bsent contrary evidence, such affidavits or declarations are generally sufficient to show that an agency complied with FOIA." Id. (citing Perry, 684 F.2d at 127). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

      Here, for the following reasons, the Court concludes that the defendant's search in response to the plaintiff's FOIA request was adequate. The plaintiff largely focuses its argument on the contract records, see Pl.'s Mem. at 6–7; however, for the reasons the Court outlined supra, Section III.A, the contract records were not responsive to the plaintiff's FOIA request, and whether the defendant searched for them does not impact the adequacy of the search. Searching for the specific documents indicated in the plaintiff's FOIA request, Ms. Alberts searched the IMPAC database using the project numbers provided by the plaintiff which returned no responsive records. See Def.'s Mot., Ex. 1 (Garcia-Malene Decl.) ¶ 16. To be sure, after conducting her search, Ms. Alberts then "contacted the NIMH Grants Management staff, who informed her that they have no responsive records related to grants for the project numbers provided." Id., Ex. 1 (Garcia-Malene Decl.) ¶ 16. The defendant therefore concluded that all logical locations were searched which could have led to the discovery of responsive records. See Def.'s Facts ¶ 34. Beyond the contract records already discussed, the plaintiff provides no further basis to challenge the good faith basis the Court must afford the defendant's declarant in

14

light of the "declaration that explain[s] the scope and method of [the] search in reasonable detail." Montgomery, 514 F. Supp. 3d at 131 (internal quotation marks omitted).  Accordingly, the Court concludes that the search the defendant conducted in response to the plaintiff's FOIA request was adequate.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 21st day of March, 2025.[4]

REGGIE B. WALTON<br>
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.